CLERK'S OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED

AUG 14 2008

JOHN F. CORCORAN, CLERK
BY: /s/ [illegible]
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | | |
|---|---|---|
| LORETTA J. HAWES, | ) | CASE NO. 3:07CV00057 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | REPORT AND RECOMMENDATION |
| | ) | |
| MICHAEL J. ASTRUE, Commissioner | ) | By: B. Waugh Crigler |
| of Social Security, | ) | U. S. Magistrate Judge |
| | ) | |
| Defendant. | ) | |

This challenge to a final decision of the Commissioner which denied plaintiff's November 30, 2004 protectively-filed claims for a period of disability, disability insurance benefits, and supplemental security income ("SSI") under the Social Security Act ("Act"), as amended, 42 U.S.C. §§ 416, 423 and 1381 et seq., is before this court under authority of 28 U.S.C. § 636(b)(1)(B) to render to the presiding District Judge a report setting forth appropriate findings, conclusions and recommendations for the disposition of the case. The questions presented are whether the Commissioner's final decision is supported by substantial evidence, or whether there is good cause to remand for further proceedings. 42 U.S.C. § 405(g). For the reasons that follow, the undersigned will RECOMMEND that an Order enter GRANTING the Commissioner's motion for summary judgment, AFFIRMING the Commissioner's final decision, and DISMISSING this action from the docket of the court.

In a decision eventually adopted as a final decision of the Commissioner, an Administrative Law Judge ("Law Judge") concluded that plaintiff had not engaged in substantial gainful activity since her alleged disability onset date, August 8, 2004, and that she was insured for benefits through December 31, 2009. (R. 15.) It was determined that plaintiff had the following severe impairments: fibromyalgia; status post motor vehicle accident, January 2003;

and back, neck, and shoulder pain. (*Id.*) The Law Judge found that when her impairments were viewed individually or in combination with one another, they did not meet or equal a listed impairment. (R. 16.) The Law Judge determined that although plaintiff's medically determinable impairments reasonably could be expected to produce the alleged symptoms, her statements concerning the intensity, persistence and limiting effects of these symptoms were not entirely credible. (R. 19.) The Law Judge then found that plaintiff retained the residual functional capacity ("RFC") to perform a full range of sedentary work, and that she was not precluded from performing her past relevant work as a bookkeeper, as the position is actually and generally performed. (R. 16, 21.) Thus, the Law Judge concluded that plaintiff was not disabled under the Act. (R. 21.)

Plaintiff filed a timely request for review by the Appeals Council and submitted additional evidence. (R. 5-8, 315.) The Appeals Council found that neither the record nor the reasons advanced on appeal provided a basis for changing the Law Judge's February 28, 2007 decision. (R. 5-6.) Accordingly, the Appeals Council denied her request for review and adopted the Law Judge's decision as the final decision of the Commissioner. (R. 5.) This action ensued.

In a brief filed in support of her motion for summary judgment, plaintiff initially argues that the Law Judge erred in finding that her depression was not a severe impairment. (Pl's Brief, pp. 6-8.) She argues that the Law Judge essentially ignored findings from a psychological evaluation which establish she suffers from major depression with moderate symptoms. (Pl's Brief, p. 6.) Finally, plaintiff argues that almost every treating and examining physician has made note of her depression in their medical records, a fact which suggests shows the severity of the condition. (*Id.*) The undersigned disagrees, and concludes that the Law Judge's finding that

2

her depression was not a severe impairment is supported by substantial evidence.

In evaluating her depression, the Law Judge noted that plaintiff was diagnosed with the condition in 2000 by her primary care physician at that time. (R. 16.) The Law Judge found that she had received treatment with antidepressants, but she had never received in-patient treatment, and she had no history of treatment by a mental health care professional. (*Id.*) The Law Judge further found that plaintiff could understand and remember simple instructions, communicate with others, act in her own best interest, and that her activities of daily living were not significantly limited by her depression. (*Id.*) The Law Judge concluded that her depression was a non-severe impairment.[1] (*Id.*)

Bruce D. Campbell, M.D. served as plaintiff's treating physician from November 4, 1999 to September 30, 2004. (R. 210-219.) The record reveals that during his treatment of plaintiff, Dr. Campbell treated her with several different antidepressants, including Lexapro, Paxil, and Zoloft. (R. 211, 213, 215-216.) The physician's records reveal that the medications seemed to generally improve, control, and stabilize the condition. (R. 211, 214-215, 217-218.)

John Davison, M.D. served as plaintiff's primary treating physician from March 8, 2006 through December 6, 2006. (R. 285-292, 307-312.) On April 24, 2006, plaintiff was seen after having made an antidepressant change from Wellbutrin to Zoloft. (R. 287.) Plaintiff reported that she had more energy, was experiencing less hunger, and overall, she was experiencing more stable moods. (*Id.*) Dr. Davison last saw plaintiff on December 6, 2006. (R. 311.) His medical

---

[1] Under the Regulations, a "non-severe" impairment is an impairment or combination of impairments which does not "significantly limit [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1521(a), 416.921(a).

note from that evaluation fails to mention her depression and states only that her antidepressant was changed. (*Id.*)

On March 9, 2006, plaintiff was evaluated by Chris Newell, M.D. of the Virginia Department of Rehabilitative Services. (R. 242-247.) In his evaluation, Dr. Newell noticed that she had a flat affect and seemed a "little" depressed. (R. 243.) Dr. Newell found that other than a flat affect, her mental status was completely "normal," and he did not assess plaintiff has having any functional limitations caused by her depression. (R. 244-245.)

On August 27, 2005, plaintiff was evaluated by Karissa Hackelton, M.D., also with the Virginia Department of Rehabilitative Services. (R. 224-228.) Dr. Hackelton noted that plaintiff reported experiencing problems with depression since her divorce in 1982, and that her symptoms worsened following the death of her son in 1988. (R. 225.) Dr. Hackelton concluded that plaintiff's depression typically was controlled with medication, and she did not find that plaintiff's depression functionally limited her. (R. 227-228.)

On July 22, 2005, plaintiff underwent an evaluation by psychologist Elizabeth J. Hrncir, Ph.D. (R. 220-223.) Plaintiff reported that she was not receiving treatment from a mental health professional, and that she is able to live alone and manage her own finances. (R. 221.) Dr. Hncir found that plaintiff's abilities to perform simple and repetitive tasks, to work without special/additional supervision, accept instructions and supervision, and to interact with coworkers and the public were not impaired. (R. 223.) The psychologist also found that plaintiff's abilities to perform detailed and complex tasks and to complete a normal workday without interruption were only mildly limited. (*Id.*) It was determined that plaintiff had only mild to moderate limitations in her abilities to maintain regular workplace attendance, perform

4

consistent work activities, and deal with the usual stressors in a competitive workplace. (*Id.*) Dr. Hrncir diagnosed plaintiff as suffering with a major depressive disorder and found that she had a Global Assessment of Functioning ("GAF") of 51 to 60.[2] (*Id.*)

State Agency record reviewing psychologists, Hillel Raclaw, Ph.D. and A. John Kalail, Ph.D., evaluated plaintiff's medical records. (R. 257-270, 229-232.) Dr. Raclaw noted that plaintiff lives independently, and she had not received any out patient or inpatient psychiatric treatment. (R. 269.) Dr. Raclaw opined that plaintiff's activities of daily living were not restricted, and that she had no difficulties maintaining social functioning, and she hadn't experienced episodes of decompensation, each lasting for an extended duration. (R. 267.) The psychologist also opined that plaintiff had moderate difficulties in maintaining concentration, persistence, or pace. (*Id.*) Dr. Raclaw diagnosed plaintiff as suffering with a major depressive disorder, but he found the condition was controlled with medication and that her functional limitations were related to her physical conditions. (R. 260, 269.) Finally, Dr. Raclaw opined that plaintiff's depression did not preclude her from making an occupational adjustment. (R. 231, 269.) On March 20, 2006, Dr. Kalil affirmed Dr. Raclaw's assessment. (R. 257.)

The record substantially supports the Law Judge's finding that plaintiff's depression is not a severe impairment. It is noteworthy that the records from plaintiff's two treating physicians, Drs. Campbell and Davison, show no referral to a psychologist, psychiatrist, or any

---

[2]The GAF ranks psychological, social, and occupational functioning on a hypothetical continuum of mental illness ranging from zero to 100. Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 32 (Text Revision 4th ed 2000) ( *DSM-IV* ). A GAF score in the range of 51-60 indicates moderate symptoms, such as flat affect and circumstantial speech, occasional panic attacks, or moderate difficulty in social, occupational, or school functioning, such as few friends and conflicts with peers or co-workers. *Id.* at 34.

other mental health professional. These physicians' treatment records also show that plaintiff was administered antidepressants, that she responded well to the medications, and that her complaints of depressive symptoms were reduced. *See Gross v. Heckler,* 785 F.2d 1163, 1166 (4th Cir. 1986) (noting a symptom is not disabling if it can be reasonably controlled by medication or treatment). Moreover, neither of these treating doctors has offered that plaintiff suffers functional limitations caused by her depression.

The evidence simply does not show that plaintiff's depression creates significant functional limitations impacting her ability to work. Plaintiff reported that she began experiencing depression in her twenties, she experienced a major episode of depression in 1988 following the death of her son, and her depressive symptoms have continued since 1988. (R. 225-330.) However, it is undisputed that plaintiff continued working until 2004. (R. 73, 86, 221.)

In sum, plaintiff has not shown that her depression significantly limits her ability to do basic work activities. Thus, there is substantial evidence to support the Law Judge's decision that plaintiff's depression was not a severe impairment.

Next, plaintiff argues that the Law Judge erred by failing to give the opinions offered by her treating physician, John Davison, M.D., substantial weight. (Pl's Brief, pp. 8-9.) Plaintiff contends that Dr. Davison's December 6, 2006 assessment, which includes a finding that she had a poor RFC, is consistent with the radiological examination of her pelvis that he requested, and consistent with the weight of the evidence. (Pl's Brief, p. 8.) Finally, plaintiff offers that, had the Law Judge afforded Dr. Davison's findings proper weight, he would have found that she was disabled. (Pl's Brief, pp. 8-9.) The undersigned believes that the Law Judge accorded proper

weight to Dr. Davison's December 6, 2006 assessment.

It is a well-established general principle that the evidence of a treating doctor should be accorded greater weight. *Hunter v. Sullivan,* 993 F.2d 31, 35 (4th Cir.1992). At the same time, when that physician's opinion is not supported by the objective medical evidence or is inconsistent with other substantial evidence, it may be given "significantly less weight." *Craig v. Chater,* 76 F.3d 585, 590 (4th Cir.1996). Moreover, where the evidence is such that reasonable minds could differ as to whether the claimant is disabled, the decision falls to the Law Judge, and ultimately to the Commissioner, to resolve the inconsistencies in the evidence. *Johnson v. Barnhart,* 434 F.3d 650, 653 (4th Cir. 2005); *Craig,* 76 F.3d at 589.

In a one-page, fill-in-the blank evaluation dated December 6, 2006, Dr. Davison offered the following bare conclusions about plaintiff's functional capacity: she could stand/walk only one hour in an eight-hour workday; she could sit "none" in an eight-hour workday; and she could lift up to five pounds, but only occasionally. (R. 307.) He further opined that plaintiff could not use her hands for repetitive simple grasping and fine manipulation, but that she could use her hands for repetitive pushing and pulling. (*Id.*) The physician found that plaintiff could use her feet for repetitive movements, such as operating foot controls, and she could reach above shoulder level, but she couldn't work with her arms extended at the waist or shoulder level. (*Id.*) Dr. Davison opined that plaintiff suffers with moderate pain. (*Id.*) Finally, he opined that plaintiff's functional limitations existed at least as far back as August 8, 2004. (*Id.*)

The Law Judge determined that Dr. Davison's December 6, 2006 assessment was entitled to "minimal weight." (R. 20.) There is nothing the undersigned can find in the extant record that would suggest that he should have concluded otherwise. (*Id.*) For instance, Dr. Davison's

7

findings that preclude all substantial gainful activity have no objective medical support, nor does he even attempt to reference any objective medical findings to support his conclusions. (*Id.*) Plaintiff asserts that December 7, 2006 pelvic x-rays (R. 309-310) support Dr. Davison's December 6, 2006 assessment. (Pl's Brief, p. 8.) While Dr. Davison's report suggests the x-rays revealed swelling and inflammation around the left greater trochanter, the upper part of the femur, the Law Judge was entitled to determine that these findings, alone, were not sufficient to support his conclusion that plaintiff is precluded from all substantial gainful activity. (R. 308.)

Moreover, the other evidence of record contradicts Dr. Davison's assessment that plaintiff is precluded from all substantial gainful activity. For example, two State Agency evaluators found that plaintiff could perform sedentary work. (R. 224-228, 242-247.) Also, two State Agency record reviewing physicians concluded she could perform sedentary work. (R. 248-255.)

Finally, the court addresses Dr. Davison's assessment that plaintiff's limitations relate back at least to August 8, 2004. (R. 307.) The record reflects that plaintiff saw Dr. Davison for the first time on March 8, 2006, and nothing in the December 6, 2006 assessment references any prior medical opinions to justify his retrospective assessment. (R. 291.) Thus, the undersigned finds that the Law Judge did not err in giving Dr. Davison's December 6, 2006 assessment "minimal weight."

Next, plaintiff argues that the Law Judge's finding that she was "not entirely credible" is not supported by the record. (Pl's Brief, pp. 9-10.) Plaintiff simply takes the position that the Law Judge did not provide an adequate explanation for his credibility determination. (*Id.*) Plaintiff offers that the Law Judge's only rationale was that he was determined to find plaintiff was not disabled. (Pl's Brief, p. 10.)

Case 3:07-cv-00057-NKM-BWC   Document 16   Filed 08/14/08   Page 8 of 12   Pageid#: 61

A claimant's subjective complaints of pain must be supported by the objective medical evidence. *Craig v. Chater,* 76 F.3d 585, 591 (4th Cir. 1996); *Johnson v. Barnhart,* 434 F.3d 650, 657 (4th Cir. 2005). Specifically, the evidence needs to show the existence of a medical impairment which could reasonably be expected to produce the amount and degree of pain alleged. *Craig,* 76 F.3d at 591; *Johnson,* 434 F.3d at 657.

The undersigned finds that the Law Judge applied the proper legal standard in assessing plaintiff's credibility. Specifically, the Law Judge found that her medical determinable impairments could be reasonably expected to produce the alleged symptoms, but that her statements concerning the intensity, persistence, and limiting effects of these symptoms was "not entirely credible." (R. 19.) To support this finding, the Law Judge initially pointed out that while plaintiff alleges debilitating hip, neck, shoulder and back pain, the objective medical findings were minimal, there is no evidence that the cane she uses was prescribed or necessary at all times, she has undergone a very conservative course of treatment, and finally, she has not been prescribed any narcotic medications. (R. 19-20.) All these reasons support the Law Judge's determination that her testimony and subjective complaints were "not entirely credible."

Furthermore, plaintiff's activities of daily living are not consistent with someone who suffers disabling pain. For example, she is able to live alone and does her own cooking and cleaning. (R. 221, 225, 243.) Also, plaintiff testified she is able to drive an hour and a half without rest breaks. (R. 334.) Thus, her actions belie her complaints of disabling pain.

Finally, plaintiff argues that the Appeals Council did not provide adequate reasoning for finding that the additional evidence she submitted did not justify further review. (Pl's Brief, p. 10.) Specifically, plaintiff contends that the evidence she submitted was "extremely relevant,"

9

yet no explanation was provided for why no further action was taken. (*Id.*) Moreover, plaintiff argues that under *Riley v. Apfel*, 88 F.Supp.2d 572 (W.D. Va. 2000), the Appeals Council must provide more than a scant discussion when it declines to find that the additional evidence warrants review. (*Id.*)

The Regulations provide that the Appeals Council must consider additional evidence submitted with a request for review if the evidence is new, material, and relates to the period on or before the date of the Law Judge's decision. 20 C.F.R. §§ 404.970(b), 416.1470(b); *Davis v. Barnhart*, 392 F.Supp.2d 747, 750 (W.D. Va. 2005). Evidence is deemed "new" if it is neither duplicative nor cumulative, and it is "material" if a reasonable probability exists that the evidence would have changed the outcome of the case. *Wilkins v. Secretary, Dep't of Health & Human Servs.*, 953 F.2d 93, 96 (4th Cir.1991); *Davis*, 392 F.Supp.2d at 750.

The additional evidence plaintiff proffered to the Appeals Council consists of a letter dated March 6, 2007 from Dave Gomez, Vice President of Environmental Pipe Cleaning. (R. 314.) According to Gomez, plaintiff was an employee of Environmental Pipe Cleaning from 1993 to August 8, 1999, and during that time, she missed a significant amount of time from work due to physical complaints. (*Id.*) Plaintiff was dismissed for making numerous mistakes, missing days from work, and often leaving work during the day. (*Id.*) Finally, Gomez reveals that plaintiff would not be eligible for rehire with Environmental Pipe Cleaning because she lacks the computer skills presently necessary for a position with his company, which is now fully computerized. (*Id.*)

Admittedly, the Appeals Council did not explain why it determined that the proffered

evidence failed to provide a basis for changing the Law Judge's decision.[3] (R. 5-7.) However, plaintiff has not shown that this additional evidence is material. Gomez's letter states the various reasons for plaintiff's dismissal from her position with Environmental Pipe Cleaning in *1999*, some five years *before* plaintiff's alleged disability onset in *2004*. (R. 315.) It is not sufficient to establish plaintiff's inability to work because of her impairments, particularly since the record shows that plaintiff actually continued to work in other employment until 2004. (R. 221.) Thus, the undersigned finds no reasonable probability or likelihood that, had the letter had been before the Law Judge prior to his February 28, 2007 decision, it would have changed the Law Judge's decision in the case.

For all these reasons, it is RECOMMENDED that an Order enter GRANTING the Commissioner's motion for summary judgment, AFFIRMING the Commissioner's final decision, and DISMISSING this case from the docket of the court.

The Clerk is directed to immediately transmit the record in this case to the presiding

---

[3]The Regulations do not direct the Appeals Council to provide a rationale for denying review. *See* 20 C.F.R. §§ 404.970(b), 416.1470(b). However, there are decisions in this district and circuit which address the issue, but they somewhat conflict. *See Boggs v. Astrue*, No. 5:07CV10, 2008 WL 467386, *10 (N.D.W.Va. February 19, 2008) (holding the Appeals Council is not required to explain its determination); *Davis v. Barnhart*, 392 F.Supp.2d 747, 751 (W.D.Va.2005) (holding that the Appeals Council was not obligated to provide reasons); *Riley v. Apfel*, 88 F.Supp.2d 572, 580 (W.D.Va.2000) (concluding the Appeals Council must provide more than a "scant discussion" of the evidence); *Ridings v. Apfel*, 76 F.Supp.2d 707, 709 (W.D.Va.1999) (holding the Appeals Council is not required to state its rationale for denying review); *Alexander v. Apfel*, 14 F.Supp.2d 839, 843 (W.D.Va.1998) (concluding the Appeals Council must provide reasoning for its determination). This case is being decided on other grounds, thus obviating the necessity for the undersigned to address the sufficiency of the Appeals Council's scant decision that the additional evidence did not provide a basis for changing the Law Judge's decision.

United States District Judge. Both sides are reminded that pursuant to Rule 72(b) they are entitled to note objections, if any they may have, to this Report and Recommendation within (10) days hereof. Any adjudication of fact or conclusion of law rendered herein by the undersigned not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(l)(C) as to factual recitations or findings as well as to the conclusions reached by the undersigned may be construed by any reviewing court as a waiver of such objection. The Clerk is directed to send a certified copy of this Report and Recommendation to all counsel of record.

ENTERED: _____
U.S. Magistrate Judge

August 14, 2008
Date