IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| LORETTA J. HAWES,<br>*Plaintiff,*<br><br>v.<br><br>MICHAEL J. ASTRUE, COMMISSIONER OF<br>SOCIAL SECURITY,<br>*Defendant* | CIVIL NO. 3:07CV00057<br><br><br>MEMORANDUM OPINION<br><br><br>JUDGE NORMAN K. MOON |

This matter is before the Court upon the parties' cross motions for summary judgment (docket no. 10, 14), the Report and Recommendation of the U.S. Magistrate Judge (docket no. 16), and Plaintiff's objections thereto (docket no. 17). I referred this matter to the Honorable B. Waugh Crigler, U.S. Magistrate Judge, for proposed findings of fact and a recommended disposition pursuant to 28 U.S.C. §§ 636(b)(1)(B) & (C). The Magistrate filed his Report and Recommendation ("Report") on August 14, 2008, recommending that this Court enter an order granting the Commissioner's motion for summary judgment, affirming the Commissioner's final decision, and dismissing this case from the docket. Plaintiff timely filed objections to the Report on August 20, 2008, obligating the Court to undertake a *de novo* review of those portions of the Report to which objections were made. 28 U.S.C. § 636(b) (2006); *Orpiano v. Johnson*, 687 F.2d 44, 48 (4th Cir. 1982).

## I. BACKGROUND

Plaintiff, Loretta Hawes, protectively filed an application for a period of disability, disability insurance benefits, and supplemental security income on November 30, 2004, alleging a disability onset date of August 8, 2004. (R. 13.) The claims were denied initially and upon

reconsideration. Thereafter, Hawes timely requested a hearing before an administrative law judge ("ALJ"), which was held on December 18, 2006. (R. 13.)

In a decision ultimately adopted as the final decision of the Commissioner, the ALJ concluded while that Hawes suffered from several severe impairments (fibromyalgia; back, neck, and shoulder pain; and status post a January 2003 motor vehicle accident), those impairments did not meet or equal the criteria for a listed impairment when viewed individually or in combination with one another. (R. 15-16.) While Hawes had been on medication for depression since she was first diagnosed in 2000, the ALJ determined that Hawes's depression was not a severe impairment. (R. 16.)

The ALJ found that Hawes's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely credible. (R. 19.) Relying primarily on several physical and mental consultative evaluations, the opinions of state agency consultants, and evidence of Hawes's "significant activities of daily living," the ALJ concluded that Hawes retained the residual functional capacity ("RFC") to perform past relevant work as a bookkeeper and was thus not disabled under the Social Security Act. (R. 21.)

Hawes timely appealed the ALJ's decision to the Appeals Council and submitted new evidence of a letter from Dave Gomez, Vice President of Environmental Pipe Cleaning, where Hawes worked as a bookkeeper from 1993 to 2004. In the letter, Gomez explains that Hawes was dismissed because of her frequent mistakes and absences at work in her last year with the company. Gomez also states that Hawes would not be re-hired by the company because she lacks the necessary computer skills, as the company is now fully computerized and the job "would require good concentration and long periods of time sitting at a computer." (R. 315.) In spite of this newly-submitted evidence, the Appeals Council denied review and adopted the ALJ's decision as the final decision of the Commissioner. (R. 5-8.) Talley timely filed the instant action

2

on October 29, 2007. The parties filed cross-motions for summary judgment, and the Magistrate recommended that this Court enter an order granting the Commissioner's motion for summary judgment and striking this case from the docket.

The Magistrate found that there was substantial evidence to support the ALJ's findings that Hawes's depression did not constitute a severe impairment and that her statements concerning the intensity and limiting effects of her symptoms were not entirely credible. He found that the ALJ did not act in error by affording "minimal weight" to an assessment performed by Hawes's treating physician, John Davison, M.D. Finally, the Magistrate concluded that the Appeals Council did not need to consider Gomez's letter because there was no reasonable probability that it would have changed the ALJ's decision in the case.[1]

In her objections to the Magistrate's Report, Hawes reiterates that neither the ALJ's credibility determination nor his finding that her depression did not constitute a severe impairment was supported by substantial evidence. She also emphasizes that the ALJ failed to accord proper weight to the physical assessment of Dr. John Davison, one of her treating physicians. Finally, Hawes argues that the Appeals Council should have addressed the Gomez letter and given it substantial weight because it states that she is incapable of performing the exact type of work that the ALJ determined she had the RFC to perform.

## II. STANDARD OF REVIEW

This Court must uphold the Commissioner's factual findings if they are supported by substantial evidence and were reached through application of the correct legal standard. *See* 42 U.S.C. § 405(g) (2000); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Substantial evidence

---

[1] The letter originally provided to the Appeals Council and considered by the Magistrate erroneously stated that Hawes was employed at Environmental Pipe Cleaning from 1993 until 1999. Hawes has provided the Court with a corrected copy, which explains that she was actually employed from 1993 until 2004. The revised dates of employment are consistent with other evidence in the record.

3

is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)), and consists of "more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F. 2d 640, 642 (4th Cir. 1966).

In determining whether the Commissioner's decision was supported by substantial evidence, the Court may not "re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary." *Craig*, 76 F.3d at 589. "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [ALJ]." *Id.* (internal quotation marks omitted). Accordingly, a court may not undertake a *de novo* review of the Commissioner's decision, and the fact that the record may support a conclusion inconsistent with that of the Commissioner is immaterial. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

## III. DISCUSSION

### A. The ALJ's Determination That Hawes's Depression Was Not a Severe Impairment Was Supported By Substantial Evidence

Hawes first argues that the ALJ's finding that her depression was not a severe impairment was not supported by substantial evidence. She points out that her treating physicians consistently described her as suffering from depression and that even the Commissioner's consultative expert, Elizabeth Hrncir, Ph.D., concluded that she suffered from Major Depressive Disorder and had a Global Assessment of Functioning score in the range of 51 to 60.[2] Finally, Hawes argues that "the State Agency psychologists…should not be considered

---

[2] The Global Assessment of Functioning ranks psychological, social, and occupational functioning on a hypothetical continuum of mental illness ranging from 0 to 100. AM. PSYCHIATRIC ASS'N, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 32 (4th ed. 2000). A score in the range of 51 to 60 indicates moderate symptoms, such as flat affect and circumstantial speech, occasional panic attacks, or moderate difficulty in social or occupational functioning. *Id.* at 34.

4

proper authorities to support the conclusion that Plaintiff does not suffer depression in total opposition to Plaintiff's own treating physicians."

An impairment is "severe" if it significantly limits an individual's ability to perform basic work activities. 20 C.F.R. 404.1521 (2008). In determining that Hawes's depression was not a severe impairment, the ALJ relied on several factors, including the fact that Hawes had never been hospitalized or treated by a mental health professional for depression and was capable of understanding and remembering simple instructions, acting in her own best interests, communicating with others, and engaging in the normal activities of daily life without significant limitation. (R. 16.) A substantial sum of evidence in the record supports these conclusions. As noted by the Magistrate, the record reveals that antidepressants prescribed by two of Hawes's treating physicians improved and stabilized her depressive condition. (R. 211, 214-15, 217-18, 287.) Furthermore, a physical consultative evaluation performed by Karissa Hackleton, M.D. of the Virginia Department of Rehabilitative Services on August 27, 2005 concluded that Hawes's depression was "typically controlled with medication." (R. 225.) A subsequent physical evaluation by Chris Newell, M.D., also of the Virginia Department of Rehabilitative Services, similarly found that Hawes's mental status was "normal" aside from a flat affect. (R. 245.) Neither Newell nor Hackleton assessed Hawes as having any major functional limitations caused by depression.

While Hrcnir diagnosed Hawes with Major Depressive Disorder (R. 223), she noted that Hawes was not limited whatsoever in her ability to perform simple repetitive tasks, work without special supervision, and accept instructions and supervision. Hrncir's evaluation stated that Hawes was only mildly limited in her ability to perform complex or detailed tasks and complete a normal workday without interruption, and mildly to moderately limited in her ability to maintain regular workplace attendance, perform consistent work activities, and deal with usual

5

stressors in a competitive workplace. (R. 223.) These findings support the ALJ's conclusion that Hawes's depression was not a severe impairment because they indicate that she was at most *moderately* (not *significantly*) limited by depression with respect to her ability to perform work-related functions.

Finally, the evaluations of the Government's record-reviewing psychologists, Hillel Raclaw, Ph.D. and A. John Kalil, Ph.D., support the ALJ's finding that Hawes's depression was not a severe impairment. Dr. Raclaw found that Hawes's depressive condition was controlled with medication, that her functional limitations were related to her physical conditions, and that her depression did not preclude her from making an occupational adjustment. (R. 231, 257, 260, 269.) Dr. Kalil later confirmed these assessments. (R. 257.) While Hawes's objection argues that the ALJ should not have credited these opinions "in total opposition" to her own treating physicians, it seems clear that the assessments of the record-reviewing psychologists were just a few of several evaluations that supported the ALJ's finding that Hawes's depression did not constitute a severe impairment. Furthermore, as explained above, Hawes's own treating physicians noted that antidepressants stabilized and improved her condition.

The mere fact that Hawes was diagnosed with depression does not necessarily mean that the disorder constituted a severe impairment. Considering the totality of evidence summarized above, it is clear that substantial evidence supported the ALJ's conclusion that Hawes's depression was not a severe impairment because it did not significantly limit her ability to perform basic work activities. Hawes's objection on this ground should therefore be overruled.

### B. The ALJ's Credibility Determination Was Supported By Substantial Evidence

Hawes argues that the ALJ's credibility determination was not supported by substantial evidence. The ALJ determined that Hawes's testimony concerning the intensity, persistence, and

6

limiting effects of her symptoms were not entirely credible in light of the objective medical evidence in the record and evidence of Hawes's daily activities. A claimant's subjective complaints of pain must be supported by objective medical evidence. *Craig v. Chater*, 76 F.3d 585, 591 (4th Cir. 1996); *Johnson v. Barnhart*, 434 F.3d 650, 657 (4th Cir. 2005). The evidence must show the existence of a medical impairment that could reasonably be expected to produce the amount and degree of pain alleged. *Craig*, 76 F.3d at 591; *Johnson*, 434 F.3d at 657.

In making his credibility determination, the ALJ relied on the fact that, contrary to Hawes's testimony, the physical examination findings concerning her physical symptoms were minimal and "essentially normal," aside from some tenderness in her shoulders, spine, neck, and hips, and some reduced lumbar and cervical spine range of motion. (R. 19-20.) He noted that Hawes was able to walk normally without the use of a cane, had received relatively conservative treatment since her alleged disability onset date, and had not been prescribed any narcotic medications for her pain. Moreover, the ALJ noted Hawes's ability to engage in everyday activities like cooking, cleaning, and driving was inconsistent with the degree of limitations alleged and indicative of the ability to perform work at the sedentary exertional level. (R. 20.) When compared with Hawes's testimony concerning the extent of her pain, all of these aforementioned factors strongly support the ALJ's finding that Hawes's testimony concerning the intensity, persistence, and limiting effects of her symptoms was not entirely credible.

Hawes objects to the Magistrate's Report because the examples of her daily activities (i.e. cooking, cleaning, and driving) "do not rise to the level of substantial evidence to support the law judge's decision" that she was not disabled. But the ALJ did not rely *solely* on the evidence of Hawes's daily activities to support his ultimate decision that she was not disabled. Nor did he rely solely on such evidence in reaching his credibility determination. Likewise, the Magistrate did not rely *solely* on this evidence to support his conclusion that the ALJ's decision

7

was supported by substantial evidence. Both the ALJ and the Magistrate used evidence concerning Hawes's daily activities as just one of several factors supporting their respective decisions. Hawes's objection should thus be overruled. In light of the conflict between Hawes's testimony and evidence of her daily activities and objective physical symptoms, the ALJ's credibility determination was supported by substantial evidence.

### C. The ALJ Did Not Err in Giving Minimal Weight to Dr. Davison's December 6, 2006 Assessment

Hawes objects to the Magistrate's finding that the ALJ accorded proper weight to Dr. Davison's December 6, 2006 physical capacities evaluation. She claims that the ALJ's decision was not supported by substantial evidence because he required objective medical evidence of her disability, but "there are currently no objective, laboratory tests for the presence or severity of fibromyalgia."

While a court is generally required to accord greater weight to the opinion of a treating physician, it need not be given controlling weight. *See Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992). If a treating physician's opinion "is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Craig*, 76 F.3d at 590. Where the evidence is such that reasonable minds might differ as to whether the claimant is disabled, the decision falls to the Commissioner to resolve the inconsistencies. *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005); *Craig*, 76 F.3d at 589.

In a one-page checklist, presumably drafted by Hawes's attorney, Davison opined that Hawes: could not sit for any amount of time in an eight-hour workday, could stand/walk for one hour in an eight-hour workday, and could not stoop, squat, or crawl. The evaluation also noted that Hawes suffered from moderate pain and could occasionally lift up to five pounds, use her hands for pushing and pulling, and reach above shoulder level. (R. 307.)

8

In light of the abundance of contradictory evidence in the record, the ALJ did not err in giving Davison's evaluation minimal weight. As described above, the evaluations of Dr. Hackleton and Dr. Newell, as well as those of the record-reviewing physicians, concluded that Hawes was capable of performing sedentary work. As noted by the Magistrate, nothing in Davison's evaluation references any prior medical opinions or clinical evidence to justify the retrospective assessment. While Hawes may be correct that there are no objective lab tests to indicate the presence or severity of fibromyalgia,[3] the fact remains that Davison's evaluation was simply a checklist offering several bare conclusions without any supporting descriptions of symptoms or clinical evidence—in stark contrast to the more descriptive and consistent opinions expressed in the other physicals evaluations included the record. The ALJ acted properly in according the evaluation significantly less weight in light of the contradictory evidence in the record, and Hawes's objection should be overruled.

## D. The Appeals Council Did Not Need to Consider Gomez's Letter Because It Was Neither New Nor Material Evidence

Finally, Hawes argues that the letter from Dave Gomez, Vice President of her former employer, Environmental Pipe Cleaning, should have been considered by the Appeals Council. She claims that the letter might have changed the ALJ's ultimate decision because it states that she is "incapable of performing the very work the law judge relegates her to perform."

After the ALJ has made a decision, the Appeals Council's ability to consider additional evidence is limited. Such evidence may only be considered if it is (1) new, (2) material, and (3) relates to the period on or before the ALJ made his decision. 20 C.F.R. §§ 409.970 (2008); *Davis v. Barnhart*, 392 F.Supp.2d 747, 750 (W.D. Va. 2005). Evidence is deemed "new" if it is neither

---

[3] While there may be no objective lab test to show the severity of fibromyalgia, the symptoms include "significant pain and fatigue, tenderness, stiffness of joints, and disturbed sleep." *Stup v. UNUM Life Ins. Co. of Am.*, 390 F.3d 301, 303 (4th Cir. 2004) (citing Nat'l Institutes of Health, *Questions & Answers About Fibromyalgia*).

duplicative nor cumulative, and it is "material" if there is a reasonable probability that the evidence would have changed the outcome in the case. *Wilkins v. Sec'y, Dep't of Health & Human Servs.*, 953 F.2d 93, 96 (4th Cir. 1991); *Davis*, 392 F.Supp.2d at 750.

Gomez's letter states that Hawes was employed from 1993 to August 8, 2004. It explains that she missed a lot of work during her last year with the company, had frequent concentration problems, and made errors with recordkeeping and filing. (R. 314.) Because of these problems, the letter explains, Hawes was dismissed from her position. It further states that the company has fully computerized and Hawes would not be eligible for rehire because she lacks the necessary computer skills and would be unable to concentrate for long periods of time while sitting at a computer. (R. 314.)

As an initial matter, Gomez's letter is not "new" evidence. It does nothing more than explain that Hawes was dismissed because of her frequent absences from work and overall poor work performance in 2004. It is duplicative and cumulative of Hawes's own testimony that she stopped working in 2004 because of physical problems she had been having as a result of an automobile accident. (R. 322-329.)

Second, the letter is not "material" evidence because there is no reasonable probability that it would change the outcome in the case. The letter, a form of non-medical opinion evidence, relates to Hawes's condition in 2004, which pre-dates nearly all of the medical evidence in the record. The physical assessments conducted by Hackleton, Newell, Davison, and the state agency medical consultants, which were considered by the ALJ in reaching his final decision, were all completed in 2005 or 2006. While the letter shows that Hawes had difficulties performing work as a bookkeeper, it is generally consistent with Hawes's testimony concerning her symptoms, which the ALJ weighed in his findings. The record already shows that Hawes

---

While some people may have such a severe case as to be totally disabled from working, most do not. *Id.*

10

suffered from aches and pains and had difficulties concentrating, and the letter does nothing more than reiterate these points. In light of these factors, there is no reasonable probability that Gomez's letter, a non-medical opinion, would have made any impact on the ALJ's decision that Hawes retained the RFC to perform past relevant work as a bookkeeper.

## IV. CONCLUSION

After a thorough examination of Hawes's objections, the applicable law, the documented record, and the Magistrate's Report, the Court overrules all objections and grants the Commissioner's motion for summary judgment. The Commissioner's decision that Hawes is not disabled because she is capable of performing past relevant work is supported by substantial evidence. The ALJ accorded proper weight to the December 6, 2006 physical assessment of Dr. Davison, and the Appeals Council did not need to consider Mr. Gomez's letter. Accordingly, it is ORDERED that the Report and Recommendation of the U.S. Magistrate Judge filed August 14, 2008 shall be ADOPTED in its entirety. The Commissioner's decision is AFFIRMED and his motion for summary judgment is GRANTED. Plaintiff's motion for summary judgment is DENIED. This case is DISMISSED and stricken from the docket of the Court.

The Clerk of the Court is hereby directed to send a certified copy of this Order to all counsel of record and to U.S. Magistrate Judge B. Waugh Crigler.

ENTER: This _____ day of October, 2008.

NORMAN K. MOON
UNITED STATES DISTRICT JUDGE

11